IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| KAREN KUMMER | § | |
| Vs. | § | CIVIL ACTION NO. 2:03-CV-125 |
| UNUM LIFE INS. CO. OF AMERICA | § | |

**MEMORANDUM OPINION AND ORDER**

**1.     Introduction.**

In this ERISA case, the surviving spouse of an insured complains that the administrator abused its discretion in denying her claim for accidental death benefits. This case is one that ultimately turns on the proper standard of reviewing an administrator's decision. Under that standard, the administrator's decision must be upheld. The court therefore renders judgment for the defendant.

**2.     Factual Background and Procedural Posture.**

The plaintiff, Karen Kummer, is the surviving spouse of Jeffrey Kummer. Through his employment at MEMC Electronic Materials, Inc., Mr. Kummer purchased insurance, including coverage under Unum Life's Group Accidental Death and Dismemberment Policy Number GSR 17509. Under the terms of the policy, Unum agreed to pay a benefit to the beneficiary for "a covered Loss which is the result of an injury." Policy, at p. 6. The policy defines Injury to mean "a bodily injury that is the direct result of an accident and not related to any other cause."

The policy provides for various exclusions from coverage. Two are applicable to this case.

The policy states:

> We will not pay any claim for a loss that is caused by, contributed to by, or resulting from:
>
> . . . .
>
> an attempt to commit or commission of a crime under state or federal law;
>
> the voluntary ingestion of that percentage of alcohol in the Insured's blood or the Insured dependent's blood which raises a presumption that the Insured or the dependent was driving any vehicle used for transportation while under the influence of alcohol. The blood-alcohol level which raises this presumption is governed by the laws of the state in which the accident occurred;

Policy, at p. 8.

On November 5, 2000, Jeffrey Kummer died as a result of injuries sustained in a one-car accident. Although the exact date and time of the accident is somewhat disputed, it occurred either late on October 30 or in the early morning hours of October 31, 2000. Jeffrey Kummer was traveling westbound on FM 691 near Sherman, Texas. The investigating officer's report indicates that Mr. Kummer ran off the right side of the road, overcorrected, crossed over the eastbound lane, and ran into a ditch and a dirt embankment. The officer's report also indicates that Mr. Kummer was not wearing a seat belt and was thrown about in the vehicle. Finally, although the officer did not charge Mr. Kummer with any crime, his report indicates that Mr. Kummer had been traveling at a high rate of speed and had been drinking.

As indicated, the time of the accident is unclear. The officer's report indicates that the officer was notified of the accident at approximately 2:00 a.m. the morning of October 31, 2000. Mr. Kummer was transported to Texoma Medical Center, where he was admitted at approximately 3:01 a.m.. The medical records indicate that he was admitted with a severe closed head injury, and he was essentially unresponsive. Mr. Kummer never regained consciousness, and he passed away on

November 5, 2000.

Although the investigating officer performed no blood-alcohol tests, the staff at Texoma Medical Center, almost immediately after admitting Mr. Kummer, administered a blood screening test which indicated a blood serum alcohol concentration of 0.189%. After an inquest, Justice of the Peace James Harris completed Jeffrey Kummer's certificate of death. Although the officer's report had listed drinking as a cause of the accident, Judge Harris indicated that it was unknown whether alcohol use contributed to Mr. Kummer's death. (Record, at 18).

Karen Kummer filed a claim for accidental death benefits. Based largely on the investigating officer's report and the blood serum alcohol concentration reported by Texoma Medical Center, Unum initially denied the claim, based on the alcohol exclusion. Ms. Kummer appealed the denial of benefits through the administrative process, and Unum again denied benefits. In affirming the initial denial, Unum added as an additional justification the exclusion relating to criminal conduct. This suit followed.

**3.     Discussion.**

   **A.     Standard of Review.**

The parties have agreed to dispose of this case on cross-motions for judgment based on an agreed administrative record. In the ERISA context, unless the terms of the employee benefit plan grant the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, an administrator's decision to deny benefits is reviewed *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Vega v. National Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999)(en banc). If the plan grants the administrator discretion, courts will review the decision only for an abuse of discretion. *Id.* In either event, however, factual determinations

made during the course of a benefits review will be overturned only upon the showing of an abuse of discretion. *Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 (5th Cir. 2004); *Meditrust Fin'l Servs. Corp. v. The Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999).

ERISA circumscribes a court's authority to overturn factual determinations made by an administrator. Nevertheless, if an administrator is self-interested–that is, when it acts in the dual role of insurer and administrator such that it benefits financially from the denial of benefits–the court may review the decision under a less deferential standard of review. *Vega*, 188 F.3d at 296. An administrator has an obligation to act within the bounds of reasonable judgment and to deal impartially with the plan beneficiaries. *Pierre v. Connecticut Gen. Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991). An administrator abuses its discretion if the decision is made without a rational connection between the known facts and the decision. *Meditrust Fin'l Servs. Corp.*, 168 F.3d at 215. A decision to deny benefits must be based on evidence that "clearly supports the basis for [the] denial." *Vega,* 188 F.3d at 299. In the absence of some concrete evidence in the administrative record that supports the denial of the claim, the court should find the administrator abused its discretion. *Id.* Bearing these standards in mind, the court now turns to the decision at issue in this case.

**B.     Analysis.**

The administrator found that Jeffrey Kummer had voluntarily ingested that percentage of alcohol sufficient to raise a presumption that he was driving his vehicle while under the influence of alcohol. In addition, the administrator found that Jeffrey Kummer died while committing a crime–driving while intoxicated. According to the administrator's decision, these facts triggered the cited policy exclusions. Although the plaintiff does not challenge the effectiveness of the plan's

exclusionary clauses, the court observes that a number of courts have upheld similar provisions in ERISA plans. *Sisters of the Third Order of St. Francis v. SwedishAmerica Group Health Benefit Trust*, 901 F.2d 1369 (7th Cir. 1990)(crime exclusion); *Rodriguez v. Unum Life Ins. Co. of America*, 2001 WL 881287 (N.D. Tex. July 26, 2001)(same); *Canada Life Assur. Co. v. Pendleton Memorial Methodist Hosp.*, 1999 WL 243653 (E.D. La. April 21, 1999)(same); *Chimel v. J C Penney Life Ins. Co.*, 158 F.3d 966 (7th Cir. 1998)(alcohol exclusion); *Pitner v. Health & Welfare Fund for the Intern. Union of Operating Engineers*, 2004 WL 3178074 (D. Md. January 21, 2004)(upholding denial based on language of alcohol impairment exclusion). This court therefore must determine whether the administrator abused its discretion when it concluded that the plaintiff's claim was excluded from coverage.

Ms. Kummer makes two arguments to overturn the administrator's decision. First, Ms. Kummer complains that the administrative record lacks evidence from which it could be determined that Jeffrey Kummer's blood alcohol content *at the time of the accident* was in excess of the legal limit for the State of Texas. According to Ms. Kummer, Unum failed to establish, through expert retrograde extrapolation, that Jeffrey Kummer was in fact intoxicated at the time of the accident. In support of this position, Ms. Kummer argues that there is insufficient evidence in this record concerning Jeffrey Kummer's tolerance for alcohol, when he had his last drink, or the length of time which had elapsed between the accident and the test administered at Texoma Medical Center.

Second, Ms. Kummer argues that there is insufficient evidence to show causation--that is, that Mr. Kummer's alcohol consumption or his commission of the crime of driving while intoxicated caused or contributed to the accident and his resulting death. She argues that Mr. Kummer might have been distracted or fallen asleep at the wheel, and that these causes, rather than voluntary alcohol

ingestion, could have caused the accident.

Notwithstanding Ms. Kummer's arguments, the administrator's conclusion in this case is rationally connected to the known facts. First, the investigating officer noted that Mr. Kummer had been involved in a *single* vehicle accident. The officer noted on the report that the driver had been traveling at a high rate of speed and *had been drinking*. (Record, at 45). The officer's report lists as a contributing cause of the accident the fact that Mr. Kummer had been drinking. *Id.* The medical evidence in the record is consistent with the officer's observations. Mr. Kummer's test results showed an elevated blood alcohol content of 0.189% as of the time of the testing. The treating physician, moreover, noted that Mr. Kummer's blood alcohol was at a "toxic" level. (Record, at 60 noting "[h]e had alcohol on board above to toxic level.").

In addition, the timing of the accident, although not perfectly clear, is demonstrated by the administrative record. The hospital discharge summary prepared by Dr. Bangerter notes "[w]hen looking back at the time frame from when he probably left the club where he was at to when he was found, the amount of time that he was down was anywhere from 30 minutes *up to an hour at the most*." (Record, at 62)(emphasis added). The officer's report suggests that the trooper was notified of the accident at 2:02 a.m. on October 31, 2000 and arrived at the scene at 2:14 a.m.. The blood alcohol test was administered at the hospital almost immediately after the admission of Mr. Kummer at approximately 3:00 a.m. October 31, 2000. Thus, the record contains evidence from which the administrator could have inferred that, at most, only approximately two hours had elapsed from the time Mr. Kummer was driving his vehicle and the time that his blood alcohol level was reported to be 0.189%.

The court has carefully considered the arguments focusing on the distinction between the

"absorption" and the "elimination" phases which occur when a person consumes alcoholic beverages. When a person drinks alcohol, the body first "absorbs" alcohol into the blood stream. Over time, the alcohol is "eliminated" from the blood stream when the blood is processed by the liver. Ms. Kummer suggests that her husband might have consumed alcoholic beverages on an empty stomach shortly before he was involved in the accident and was in the absorption phase from the time of the accident until the time of the toxicology tests. This sequence of events would account for the elevated blood alcohol content revealed by the tests but would also suggest that Mr. Kummer was not intoxicated at the time he was driving. She therefore argues that without knowing more facts, the administrator could not rationally conclude that Mr. Kummer was intoxicated at the time of the accident.

This position would have more force if the test results from the hospital had revealed a lower blood alcohol concentration. But the problem with the argument is that Mr. Kummer's alcohol level was not only in excess of the legal limit, it was considerably above that limit at the time of the testing. At the time of this accident, the legal limit in Texas was 0.08%. *See* Tex. Pen. Code Ann. art. 49.01. Thus, Mr. Kummer's blood alcohol level was at least twice the legal limit when the test was administered.[1] Moreover, the administrator had evidence before it that suggested Mr. Kummer had left a "club" late at night and had been involved in an accident approximately two hours before the hospital administered the blood test. It therefore cannot be said that the administrator's finding that Mr. Kummer was legally intoxicated at the time of the accident was irrational or unconnected

---

[1] This is true whether one uses the results of the blood *serum* alcohol test administered by the hospital or estimates a lower percentage of *whole* blood alcohol content utilizing the blood serum results. The plaintiff and her expert concede that the blood alcohol content of whole blood would have been 0.16%. (Plaintiff's Brief, at 3).

to known facts.

The court has also carefully considered the plaintiff's argument on causation. Ms. Kummer contends that there is no evidence from which the administrator could have determined that alcohol or driving while intoxicated–as opposed to some other event–caused the accident. She argues that "it is equally plausible based upon this Record that Mr. Kummer lost control of his vehicle in the early morning hours of October 31, 2000 after falling asleep or taking evasive action." She bolsters this argument by pointing to the Justice of the Peace's statement that it was unknown whether alcohol had contributed to Mr. Kummer's death. (Record, at 18). In the absence of additional evidence regarding the initial cause of the accident, the plaintiff contends that this court should overturn the administrator's decision. Again, however, this court must reject the plaintiff's argument.

The court in *Strasser v. Unum Life Ins. Co. of America*, 2001 WL 1645731, *6 (N.D. Iowa August 14, 2001), addressed a similar argument made by the beneficiary. There, the beneficiary argued that the administrator had not shown that alcohol consumption caused the accident. She urged that the driver of the vehicle might have taken evasive action to avoid a deer, become momentarily distracted, or fallen asleep at the wheel. In upholding the administrator's denial of benefits under a similar crime exclusion, the court stated "[w]hile it is true that absent alcohol, the driver can be inadvertently distracted or fall asleep at the wheel on occasion, the Court agrees that alcohol cannot be so neatly excised from the equation." *Id.* The court also reasoned "even were the Court to accept the supposition that there was an alternate intervening cause for Mr. Houdek's accident, the suggestion that his blood alcohol level did not cause or contribute to the accident simply has no basis in the record." *Id.* at n.2.

In the ERISA context, this court is constrained to agree with the *Strasser* court's observations. The evidence in the administrative record was that Mr. Kummer had been involved in a single-car accident in which he drove off the right side of the road, overcorrected, and veered across the road into the ditch and a dirt embankment. The *absence* of any evidence to suggest other causes implies that Mr. Kummer's ingestion of alcohol had adversely affected his motor skills and perception, which caused him initially to leave the roadway. This view of the record leads to a conclusion that alcohol was a cause of the accident which resulted in Mr. Kummer's death. Although this court might have insisted on more proof were it finding the facts, it cannot say that the administrator's decision to credit this version of events was an abuse of discretion, even considering the heightened standard of review applicable to this case.

**4.     Conclusion.**

This court does not lightly turn away an innocent spouse from policy benefits. This is particularly true with respect to coverage designed to temper the financial loss resulting from an accidental and unexpected death. But Congress has delegated a limited role to district courts who review decisions of plan administrators. This court is not authorized to second-guess that legislative judgment. Under the record of this case and the applicable exclusions, the administrator did not abuse its decision when it found that the insurer had not agreed to underwrite this loss. The court therefore grants the defendant's motion for judgment based on the administrative record.

SIGNED this 3rd day of May, 2005.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE